UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RESIDENT COUNCILS OF WASHINGTON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> TOMMY G. THOMPSON, Secretary of United States Department of Health and Human Services, <br><br> Defendant. | No. C04-1691Z <br><br> ORDER |

This matter comes before the Court on the Defendant's motion to dismiss. For the reasons outlined herein, the Court GRANTS IN PART AND DENIES IN PART the Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, docket no. 63.

**I. BACKGROUND**

**A. The Parties and the Present Action**

Plaintiffs are a group of individual nursing home residents and organizations representing the interests of nursing home residents and their families. First Amended Complaint, docket no. 14, ¶¶ 7-14. Four of the individual Plaintiffs, Louise Clark, Dan Fruichantie, Dolores Shafer, and Mike Swope, currently reside in Washington nursing homes. Id. at ¶¶ 10, 11, 13, 14. The remaining individual Plaintiff, Wilbert Schroeder, resides in a Michigan nursing home. Id. at ¶ 12. The organizational Plaintiffs in this case are Resident Councils of Washington ("Resident Councils"), the Washington State Long-

ORDER 1–

Term Care Ombudsman Program, and the Michigan Campaign for Quality Care.  Id. at ¶¶ 7-9.  Resident Councils is a non-profit organization whose membership consists of nursing home residents and whose primary goal is to empower residents and protect nursing home quality of care.  Id. at ¶¶ 7, 48.  The Washington State Long-Term Care Ombudsman Program is a statutorily formed organization that represents Washington long-term care facility residents and whose mission is to promote the interests, well-being and rights of its members.  Id. at ¶¶ 8, 55; see also Wash. Rev. Code 70.129.010-090; Wash. Admin Code 365-18-010.  The Michigan Campaign for Quality Care is a non-partisan, grassroots group whose membership consists primarily of the family members of current and former nursing home residents and whose mission includes protecting nursing home residents' well-being.  First Amended Complaint, docket no. 14, ¶¶ 9, 60.  Plaintiffs seek declaratory, injunctive, and mandamus relief prohibiting the Defendant from implementing regulations which would permit the use of paid feeding assistants in nursing homes and ordering the Defendant to rescind the regulations.  Id. at ¶ 5.

### B.     The Feeding Assistant Regulations

The regulations create a "paid feeding assistant" job category within nursing homes and allow states to opt in and permit skilled nursing facilities to use feeding assistants, consistent with minimum state and federal requirements.  Id. at ¶¶ 37-38; see also 42 C.F.R. 483.35(h).  Feeding assistants may work with patients after receiving as little as eight hours of training, which is significantly less than the 75 hours required by law for certified nursing assistants (C.N.A.s) employed in such homes.  First Amended Complaint, docket no. 14, ¶¶ 26, 37; see also 42 C.F.R. § 483.160; 42 U.S.C. §§ 1395i-3(b)(5)(A), 1395i-3(e)(1), 1395i-3(f)(2).  The regulations prohibit feeding assistants from assisting residents who have been identified by a charge nurse as having complicated feeding problems, including difficulty swallowing.  42 C.F.R. § 483.35(h)(3).  The United States Department of Health and Human Services estimates that up to twenty percent of the 17,000 nursing homes in the United States

ORDER  2–

participating in Medicare or Medicaid will employ feeding assistants.  First Amended Complaint, docket no. 14, ¶ 40; see also 68 Fed. Reg. 55,536 (Sept. 26, 2003).  Prior to the feeding assistant regulations, the Department of Health and Human Services considered the feeding of residents to be a "nursing related service" under the federal Nursing Home Reform Law and the law required that this service be performed by a licensed health care professional, a registered dietician, a C.N.A., or a volunteer.  First Amended Complaint, docket no. 14, ¶ 28; see also 42 U.S.C. 1395i-3(b)(5)(F).  Washington has adopted the feeding assistant regulations.  See id. at ¶¶ 42, 43; see also Washington Department of Social and Health Services, Aging and Disability Services Administration: Memorandum NH #2004-004 (Feb. 23, 2004).  Michigan has not formally adopted the regulations but plans to implement a pilot program to evaluate the use of feeding assistants.  First Amended Complaint, docket no. 14, ¶ 44.  However, Plaintiffs alleged that dining assistants would begin working in Michigan nursing homes in January, 2005.  Id.

### C. Impact of Regulations on Plaintiffs

Plaintiffs allege that the feeding assistant regulations place nursing home residents, including members of the Washington organizations, at risk of future physical injury.  See Plaintiffs' First Amended Complaint, docket no. 14, ¶¶ 47, 51, 57.  Specifically, Plaintiffs allege that: (1) under the regulations, paid feeding assistants may assist residents after receiving as little as eight hours of training; (2) this is significantly less than the training required for a C.N.A.; (3) prior to the regulations, feeding assistance was considered a nursing related task and when performed by a staff member required at least the training of a C.N.A.; (4) some nursing homes have begun to employ paid feeding assistants; (6) it is estimated that up to forty to sixty percent of institutionalized older persons suffer swallowing disorders and that such disorders go unrecognized in up to one-fourth or one-fifth these cases; (7) residents have encountered dangerous health problems during mealtimes due to hurried or insufficiently trained aides.  Id. at ¶¶ 25, 26, 37, 40, 43-47.  Some of the individual

ORDER   3–

Plaintiffs allege that they fear that the lesser trained feeding assistants will be unprepared to care for nursing home residents. Id. at ¶ 63-67. Although all individual Plaintiffs allege that they fear a general reduction in the quality of their nursing home care resulting from the replacement of nursing staff with feeding assistants, only one, Dolores Shafer, alleges that she currently relies on nursing home staff for feeding assistance. Id. Ms. Shafer also alleges that she currently suffers from a swallowing disorder. Id. at ¶ 66.

All organizations allege that implementation of the regulations will force them to devote scarce time, effort, staff, and other resources to alert nursing home residents and others to the feeding assistant regulations, to the harm that will be caused by the use of feeding assistants in nursing homes, and to advocate for changes in state policy. Id. at ¶¶ 52, 58, 61. All organizations also allege that these resources could be used for other projects to further the organizations' missions. Id. Plaintiff Michigan Campaign for Quality Care claims that it has already spent resources in its participation in a Michigan workgroup convened for the development of Michigan's pilot program. Id. at ¶ 61. The Michigan organization opposes the use of feeding assistants because such use will result in care being provided by inadequately trained staff and the regulations interfere with and impede the mandate of the Michigan organization. Id. at ¶¶ 60, 62.

## II. DISCUSSION

### A. Standard of Review

Defendant moves pursuant to Fed. R. Civ. Proc. 12(b)(1) to dismiss this action for lack of subject matter jurisdiction. The substance of Defendant's motion is that subject matter jurisdiction is not present because the Plaintiffs do not have standing to bring this suit. "Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). "[T]hose who wish to invoke the jurisdiction of the federal courts must satisfy the threshold requirement of Article III . . . by alleging an actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). Because this

ORDER  4–

motion is brought under Fed. R. Civ. P. 12(b), the Court must presume that the general allegations in the complaint encompass the specific facts necessary to support those allegations. See Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 104 (1998).  This action may go forward so long as any one Plaintiff has standing. See Watt v. Energy Action Educational Found., 454 U.S. 151, 160 (1981).

### B. Standing Requirements

Defendant argues that all Plaintiffs have failed to establish standing under Article III of the Constitution. " [S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "To satisfy the Article III case or controversy requirement, a litigant must have suffered some actual injury that can be redressed by a favorable judicial decision." Iron Arrow Honor Society v. Heckler,  464 U.S. 67, 70 (1984). Standing is a judicially created doctrine and "unlike other jurisdictional doctrines, focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." Pritikin v. Department of Energy,  254 F.3d 791, 798 (9th Cir. 2001) (internal citations omitted).  The issue in the present case is whether individual and organizational Plaintiffs have alleged facts sufficient to show Article III standing.

### C. Individual Plaintiffs

To have standing, the individual Plaintiffs in this case must allege facts sufficient to show three elements:

> First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of-- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Defenders of Wildlife, 504 U.S. at 560-61 (internal citations and quotations omitted); see also Steel Company v. Citizens for a Better Environment, 523 U.S. 83, 103-104 (1998)

ORDER   5–

(stating that this "triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement"). Defendant argues that individual Plaintiffs have failed to allege facts sufficient to establish all three of these elements.

The "Supreme Court has consistently recognized that threatened rather than actual injury can satisfy Article III standing requirements." Harris v. Board of Supervisors, Los Angeles County, 366 F.3d 754, 761 (9th Cir. 2004) (internal citations omitted). To meet the required showing for standing when standing is based upon the threat of future injury, a plaintiff must show that the threat of injury is both real and immediate, not conjectural or hypothetical. Lyons, 461 U.S. at 102. "[H]ypothetical, speculative or other 'possible future' injuries do not count in the standing calculus." Schmier v. U.S. Court of Appeals for the Ninth Circuit, 279 F.3d 817, 821 (9th Cir. 2002). Mere allegations of a possible future injury do not satisfy the Article III requirements. Whitmore v. Arkansas, 495 U.S. 149, 158 (1990). Although the required degree of threat has never been precisely articulated, what "a plaintiff must show is not a probabilistic estimate that the general circumstances to which the plaintiff is subject may produce future harm, but rather an individualized showing that there is 'a very significant possibility' that the future harm will ensue." Nelsen v. King County, 895 F.2d 1248, 1250 (9th Cir. 1990) (internal citations omitted). Analysis of the threat of future injury must be individualized and must take into account all contingencies that may arise in an individual case before future harm will ensue. See id. at 1251.

Here, the Court finds that Plaintiffs have failed to allege sufficient facts to make an "individualized showing" that there is "a very significant possibility that the future harm will ensue." See id. at 1250. The chain of contingencies that must occur for these individuals to face any threat of future injury is simply too speculative. See Lee v. State of Oregon, 107 F.3d 1382, 1388-89 (9th Cir. 1997). Plaintiff Wilbert Schroeder resides in a state that has not yet adopted the regulations; therefore, on the facts alleged does not face an imminent threat of being fed by a feeding assistant. The mere implementation of a pilot program in

ORDER  6–

1  Michigan nursing homes is not a sufficient risk where no facts are alleged as to the number
2  and location of pilot facilities.  In addition, Plaintiffs Wilbert Schroeder, Louise Clark, Dan
3  Fruichantie, and Mike Swope do not allege that they currently rely on nursing staff for
4  assistance in eating.  Accordingly, it is unknown if or when in the future these individual
5  Plaintiffs will face any alleged risk of being fed by feeding assistants.  Finally, even though
6  Plaintiff Dolores Shafer currently lives in a nursing home in a state that has adopted the
7  regulations and alleges that she relies on nursing staff for feeding assistance, this Plaintiff
8  also alleges that she currently suffers from a swallowing disorder.  Under the regulations,
9  this Plaintiff would be ineligible for feeding assistant aid.  See 42 C.F.R. § 483.35(h)(3).

10         Plaintiffs have also failed to allege facts sufficient to show that the claimed future
11 injury of a general decline in the quality of nursing home care for residents as a whole is any
12 less hypothetical.  Even presuming that the general allegations in the complaint encompass
13 the specific facts necessary to support these allegations, the alleged injury is too hypothetical
14 to meet the requirement of an injury in fact.  See Steel Company, 523 U.S. at 104.  Each
15 individual Plaintiff alleges a subjective fear that the use of feeding assistants in his or her
16 facility will result in decreased quality of care due to resulting changes in nursing home
17 staffing and inadequate training of the new assistants.  Such alleged hypothetical future
18 injuries based on subjective fears and speculative future events are not sufficient to meet the
19 Article III standing requirement of a certainly impending injury.  See Lee, 107 F.3d at 1388-
20 89.  For these reasons, the Court finds that the individual Plaintiffs have failed to meet their
21 required showing of injury in fact.  Because the Court finds that the injury in fact element
22 has not been met, the Court does not reach the standing elements of causation and
23 redressability.  The Court concludes that the individual named Plaintiffs do not have standing
24 to pursue this action.

ORDER  7–

### D.  Organizational Plaintiffs

An association may seek standing to bring suit in two ways: (1) on behalf of its individual members; or (2) on the organization's own behalf. Warth v. Seldin, 422 U.S. 490, 511 (1975). Here, Defendants argue that the organizational Plaintiffs have failed to show they have standing on either of these grounds.

#### 1.  Washington Organizations

"An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000). An organization suing on behalf of its members must allege facts sufficient to show, at a minimum, that its members would otherwise have standing to sue in their own right. See Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 345 (1977). For the purposes of the standing analysis, the constituents of the statutorily established Washington Long-Term Care Ombudsman Program are treated as the functional equivalent of members. See Oregon Advocacy Center v. Mink, 322 F.3d 1101, 1112 (9th Cir. 2003).

Plaintiffs allege that Washington has adopted the feeding assistant regulations, has developed a training program and that an estimated twenty percent of Medicare and Medicaid participating nursing homes will employ paid feeding assistants. In addition, Plaintiffs allege that some nursing homes have already begun to employ such assistants. The complaint allegations include estimates that between forty to sixty percent of institutionalized older persons have swallowing disorders and that these disorders may go undiagnosed in up to one-fifth to one-forth of residents with such disorders. Finally, Plaintiffs allege that lesser trained paid feeding assistants will cause physical harm to the Washington organizations' members who rely on feeding assistance. Based on these

ORDER  8–

allegations, it is not pure conjecture that there are members of the Washington organizations who face a very significant possibility that the alleged future harm will ensue. See California Rural Legal Assistance, Inc. v. Legal Services Corporation, 917 F.2d 1171, 1174-75 (9th Cir. 1990) (finding that organization had standing to sue on behalf of members where complaint alleged facts sufficient to show that many of its members would be adversely affected even though such members were not specifically identified).

Plaintiffs have also alleged facts sufficient to meet the causation and redressability standing elements for these organizations' individual members. To meet the causation element, a plaintiff must show that there is a causal connection between the conduct complained of and the claimed injury. Defenders of Wildlife, 504 U.S. at 560. This means that the injury must be fairly traceable to the actions of the defendant. Central Delta Water Agency et al v. United States, 306 F.3d 938, 947 (9th Cir. 2002). In the determination of this element, the length of the chain of causation is not the issue, but rather the plausibility of the links that comprise the chain. See Nat'l Audubon Society, Inc. v. Davis, 307 F.3d 835, 849 (9th Cir. 2002); see also Autolog Corp. v. Regan, 731 F.2d 25, 31 (D.C. Cir. 1984). Here, Plaintiffs allege that they will be fed by feeding assistants and harmed as a result. The Court finds that the plausibility of the links comprising the chain between the regulations and alleged injury is enough to show that the alleged injury could be fairly traceable to the regulations. See Nat'l Audubon Society, Inc., 307 F.3d at 849. The third and final standing inquiry, "redressability," requires a court to determine whether it possesses the ability to remedy the harm that a petitioner asserts. Citizens for a Better Forestry v. United States Dept. of Agriculture, 341 F.3d 961, 975-76 (9th Cir. 2003). In this case, the Court has the ability to determine whether the regulations are in conflict with and violate the provisions of the Nursing Home Reform Law. The Court finds that these Plaintiffs have met the third "redressability" element of standing because if such a determination is made nursing homes will not be authorized to employ feeding assistants and the harm the Plaintiffs assert will be

ORDER  9–

remedied. For these reasons, the Court concludes that Plaintiffs have alleged facts sufficient to show that individual members of the Washington organizations have standing to sue on their own behalf.

Finally, the facts alleged are sufficient to show that the interests at stake are germane to these organizations' purposes because the interest at stake in this case is the residents' physical safety, which is germane to both Washington organizations' purposes of protecting nursing home residents' well-being. See Columbia Basin Apartment Association v. City of Pasco, 268 F.3d 791, 799 (9th Cir. 2001). In addition, neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit because the declaratory, injunctive, and mandamus relief sought in this case does not demand individualized proof on behalf of its members. Id. For these reasons, the Court concludes that the Washington organizations, Resident Councils and the Washington State Long-Term Care Ombudsman Program have standing to bring this action on behalf of their individual members. The Court does not reach the issue of whether these organizations would also have standing to sue on their own behalf.

**2.    Michigan Organization**

Plaintiffs have failed to allege facts to show that the threatened future injury to any of the Michigan organization's members is "real and immediate" and not "conjectural or hypothetical." See Lyons, 461 U.S. at 102. The Michigan organization represents primarily family members of residents and no facts have been alleged to show that any of its members face imminent injury from feeding assistant regulations not yet formally adopted by Michigan. For these reasons, the Court concludes that the Michigan organization does not have standing to sue on behalf of its individual members because Plaintiffs have identified no member of this organization that would have standing to sue on his or her own behalf.

An organization is also permitted to sue on its own behalf if it can meet the Article III requirements of injury in fact, causation and redressability. See Havens Reality Corp. et al v.

ORDER  10–

1  Coleman, 455 U.S. 363, 378-79 (1982) (organization has standing to sue where it alleged
2  such a personal stake in the outcome of the controversy as to warrant invocation of federal
3  court jurisdiction).  An organization may satisfy the Article III requirement of injury in fact
4  by demonstrating: (1) frustration of its organizational mission; and (2) direct harm to its
5  ability to provide services.  See id. at 379; see also Smith v. Pacific Properties and
6  Development Corp., 358 F.3d 1097, 1105 (9th Cir. 2004).  Where the alleged harm is merely
7  a setback to an organization's abstract social interests rather than a concrete and
8  demonstrable injury to the organization's resources, the injury in fact requirement has not
9  been met.  See Havens, 455 U.S. at 379; see also Sierra Club v. Morton, 405 U.S. 727, 734-
10 35 (1972) (no organizational standing where an organization alleges merely a special interest
11 in a problem); Center for Law and Educ. v. Department of Educ., 396 F.3d 1152, 1162 (D.C.
12 Cir. 2005) (no organizational standing present where the only service impaired is pure issue
13 advocacy).  Defendant argues that the Plaintiffs have not alleged facts sufficient to show that
14 the alleged harm posed to the Michigan organization extends beyond mere issue advocacy.

15      Here, the underlying threatened harm to the Michigan organization's members is not
16 certainly impending because the regulations have not yet been formally adopted in this state.
17 As the underlying harm facing this organization's members is not imminent but is merely
18 speculative, the Michigan organization's alleged injury of frustration of its organizational
19 mission is more of a setback to its "abstract social interests" than "concrete and demonstrable
20 harm" to its activities.  See Havens, 455 U.S. at 379.  Although Plaintiffs allege that the
21 organization has devoted resources towards assisting in developing Michigan's pilot
22 program, these activities amount to mere issue advocacy, rather than harm to the
23 organization's ability to offer services to its members.  See Center for Law and Educ., 396
24 F.3d at 1161.  For these reasons, the Court concludes that the Plaintiffs have failed to allege
25 facts to show that the Michigan organization has standing to sue on behalf of its individual
26 members or on behalf of itself.

ORDER   11–

### E. **Plaintiffs' Standing and the Administrative Procedure Act**

Plaintiffs request judicial review of the Defendant's actions. Plaintiffs argue that Defendant has violated the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A), in promulgating a regulation that departs from agency precedent without a reasoned explanation and without empirical support. In addition to the Article III standing requirements, a plaintiff bringing an action under the APA must establish standing by showing that (1) there has been final agency action adversely affecting the plaintiff, and (2) as a result, the plaintiff suffers legal wrong or its injury falls within the "zone of interests" of the statutory provision the plaintiff claims was violated. Lujan v National Wildlife Federation, 497 U.S. 871, 882-83 (1990). Plaintiffs Resident Councils and the Washington State Long-Term Care Ombudsman Program have alleged sufficient facts to establish standing to challenge the agency's actions as arbitrary and capricious.

### III. CONCLUSION

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART the Defendant's motion to dismiss for lack of subject matter jurisdiction, docket no. 63. The motion to dismiss is GRANTED as to individual Plaintiffs Wilbert Schroeder, Louise Clark, Dan Fruichantie, Mike Swope and Dolores Shafer and as to Plaintiff Michigan Campaign for Quality Care and these Plaintiffs are dismissed from this action without prejudice. The motion to dismiss is DENIED as to Plaintiffs Resident Councils and the Washington State Long Term Care Ombudsman.

The Court renotes Plaintiffs' Motion for Summary Judgment, docket no. 50, and Plaintiffs' Motion to Certify Class, docket no. 54, for consideration on May 27, 2005.

IT IS SO ORDERED.

DATED this 2nd day of May, 2005.

Thomas S. Zilly
United States District Judge

ORDER   12–